May it please the court, Stuart Cuddle on behalf of the City of New Orleans. It's a privilege to argue here today, and if not for the protocol for appearing today I would have been joined by the City Attorney, Denise Turner and James Garner and Debra Fishman from my office. This appeal is about protecting state rights to govern state court judgments on state and local claims. Plaintiffs are successful state court litigants who challenged the traffic ordinance and that conflicted with a local governing body of law in New Orleans called the Home Rule Charter and they obtained a state court judgment. Now they're seeking federal courts to federalize that state court judgment and unfortunately the district court has allowed that, which is an improper use of a takings clause. So what's going on with that judgment? You know, in 2019 the intermediate court in Louisiana affirmed it and said that it should be the immediate return of the $25 million plus dollars in January of 2020, um, I'm sorry, but then the SCOLA denied cert and also in 2019, what's going on with that? It's just sitting there and no, no, so what is, what's going on? That judgment goes on what's called a list that the city of New Orleans has for judgments to be paid that were rendered by courts against the city of New Orleans and it's going to be treated like every other judgment. Right, so it's been sitting there for two plus years now, um, is it accruing interest? What's happening to this judgment and how long will it normally sit there? What's going to happen? So I think there's two parts to your question, which I hope I can answer, is first what happens is it will be paid when there's an appropriation and that's consistent with Louisiana constitutional law and statutory law, which prohibits the seizure of public funds to pay on a judgment and provides that the judgment is paid when there's an allocation. The second, you mentioned interest, this judgment in the state court litigation does also award interest, so there is interest embedded. So it's accruing interest the whole time? Yes Your Honor. And it's just sitting there. Is there been a request for a, um, the legislature to allocate funds for this judgment? I'm not aware of a request specifically for this judgment. I am aware that there is a judgment fund that was created by the city council pursuant to an ordinance and there is now two million dollars in it. Do you not feel some responsibility to make sure this gets carried out with the Louisiana judgment? I mean, you're not aware of whether they've even requested the money? I am aware that the city, well the city takes its judgments seriously, and so I'm aware that it of course still waits for there to be an appropriation to pay. Right, but if no appropriation's been requested, then that would be, if it's taking it so seriously, it would seem that the city would have a responsibility to make that request. I guess I can't answer either way. I know that the judgment... So how can you say it takes it seriously if you can't tell me if they've done anything to try to pay off this judgment, to get the money from the legislature? That doesn't sound very serious to me. And I respect your appreciation, I think I can state based on the record that the complaint alleged that the judgment hadn't been paid and the statement from the mayor was that it would treat the judgment like every other state court judgment. So I guess the best way I can respond to you is to say that it will be treated like other state courts. Which may or may not be serious. So where did you get the idea that it was taking it seriously? Because it treats it like everything else and just goes on a list and doesn't ever get paid. Doesn't seem very serious to me, and I'm not saying that's what happens, but that's, you're not telling me anything to the contrary. I can say to the contrary that in 2019 that there was a new fund created, a specific fund called the Judgment Fund. That was actually a new ordinance passed in 2017. Have judgments been paid in a routine manner since 2019, and this is the next one up on the list or something now that it's 2022? Well, judgments are being paid from that fund, and I'm not exactly sure where this is on that list. Okay, so is your argument that this is not a taking and that they should have to go back to the state district court and hold them in contempt or something for not, you know, do whatever state remedy, what remedy do they have in state law to try to get this money? Well, the remedy is limited by the Louisiana Constitution and by statutory law in Louisiana. So the remedy in a general sense is to understand that's what the laws are existing in. That's right, but if the state official is not taking any action to request the appropriation, I guess they could go back to the district court and try to hold the individual official in contempt or something, but is that your knowledge, too, or do they just have to sit and wait for 10 years or 20 years or forever? Well, they have to wait for an appropriation. I guess there is a political process that may be trying to request or hopefully— But you don't know anything about that process? I can't speak to that in this record, Your Honor. So you don't have anything to offer about how they could get their money in state court? I can—well, not more than what I've already explained about the— Which is not really anything to tell of anything that they could do to hasten this very lengthy process. I understand that— They may not have even started yet. That's the situation, Your Honor, and I understand the sense that it could feel unfortunate, but at the same time, that's the same thing when governments waive sovereignty or don't waive sovereignty. There's been a policy determination about this type of lawsuit to be able to occur. At the same time, there's been a policy determination by the Louisiana Constitution about how the judgment is to be paid. And it's the idea that—I'm sorry. I was just going to turn to the Voight and ask, has the government forcibly appropriated a private party without a claim of right such that Voight would be applicable? And I appreciate you raising that decision. I think that's obviously a key case that was applied by the district court here to find a takings claim. And our position is Voight does not apply to this case because there wasn't a forcible appropriation of mineral royalties derived from an underlying expropriation. That's a very specific case we believe is a fact-specific case and should be limited to the facts of that case. Because in this court's appreciation of what happened in the state court in Voight there was already a legislative act, 1984, that said property that was taken from these landowners to be returned, including the mineral royalties. There was also a determination—I think this is key—in that litigation that the title had passed to the landowners from the levy board of these mineral royalties. And yet the levy board continued to collect these mineral royalties. And when there wasn't the ability to execute and to collect back the mineral royalties to the landowners, what this court found in looking at the record of that case is that they could identify that there was a taking of those mineral royalties. And I'll also add that mineral royalties are a recognized property right in Louisiana and that's a key point to discerning whether there is a takings or not. Of course, the federal courts protect property interests, but they don't create it. You look to state law to see if there is a property interest. And so while the general rule is that the judgment itself is not a recognized property interest, in Voight's case there was an identification of the mineral royalties, which was the property interest that this court found was taken by the levy board. I want to try to understand, because this is not particularly developed in the blue brief, the concept of Louisiana law and how this is supposed to work. So you say the Louisiana Constitution prohibits suits to enforce judgments, so creditors can't collect judgments against the city of New Orleans, presumably the state of Louisiana. How exactly does it work? The Louisiana Constitution gives the legislature the power to put money into the judgment fund, and then does the city adopt an ordinance pulling money out of the fund to pay the judgments? Is that the mechanism? That's essentially correct, Your Honor. There is a constitutional article that you referenced that, I guess, first waives sovereign immunity for general tort and contract claims, and then that same provision provides a limitation for seizure of public funds. And then, again, there's statutory authority that refers to the fact that the payment actually has to come from the appropriation. Whose appropriation, the state's or the city's? Because if it's a judgment against the city, then it would be the city's appropriation. Out of a judgment fund created by the state? No, Your Honor. It would be just out of the city's general fund. There recently was a new fund created called judgment fund. And is that a state fund or a city fund? I just want to be clear. Oh, I apologize. City fund. Got it. And so can the city – could the city pay the judgment today if it wanted to? The – I don't know the – I guess I can't – I don't have the budget in the back of my head to answer the numbers there. I do know that there are obviously – they need to treat judgments equally, right? And so there's other still judgments on the list. So I don't know if it couldn't be today. I guess what I'm getting at is I took the sentence in your – I'm looking at pages 34 and 35 of the blue brief, and what I took you to be saying is that somehow Louisiana law ties the hands of the city in the way that it pays judgments. But what I'm understanding in both your responses to Judge Elrod and to me is what I think you're saying is that the city could actually adopt an ordinance. It has to treat judgments equally, and it takes its judgments seriously. But in theory, the city could adopt an ordinance pulling money out of the general fisc of the city and pay the judgment if it wanted to. Yes, Your Honor. In theory, that could happen because, of course, it's subject to the policy determination of the legislative body for the city, the city council, and the decisions made for appropriations. So it's not actually – there's no disability imposed on the city by state law, either at the constitutional level or state statutory level, to prevent you from paying the judgment? I guess if your question is, is there a prohibition from making an allocation, then no, Your Honor. Got it. I want to move on also about the vote decision. A key issue that I think I hope the court appreciates is that the differences in this case and vote are significant because by extending that case to here actually creates a result that would be in conflict with this court's precedent. And I'll key y'all into the decision of the St. Bernard Parish School Board, which is, of course, a decision from this court, which recognized and appreciated what Louisiana law was, the same law that we're discussing today about the Louisiana Constitution and statutory law, and recognized that there isn't a property interest in a judgment. And so, therefore, just because the judgment hadn't been paid, it's simply a recognition of the government of an obligation to pay. But there's not a property interest that would allow a plaintiff who has an unpaid judgment to assert a due process or a takings claim. And— Remind us what the ATES program governed? ATES is the Traffic Camera Ordinance. There are cameras throughout— It involved property. It did involve property. It fined people for violating— It didn't involve a real property interest like the Voight case. That's a somewhat friendly question. Yes, ma'am. What is the oldest judgment on this list? My understanding is it goes back over a decade. But again, that—and while I see you shaking your head, I appreciate that that seems unfair. That is still—there can be different policy views of that. And that's why we're emphasizing that that policy view on how the judgment is paid has been made within the Louisiana Constitution and Louisiana statutory law. Right. And Louisiana waived its sovereign immunity and said, City, you can do what you want to do. So there's nothing that's a hindrance to—except whether they have the money and whether they've spent their money wisely, et cetera. And of course, those policy determinations change over time. And we've been in the midst of a pandemic where there has to be— A pandemic is not why you haven't paid judgments for 10 years or 20 years or whatever it is. And I understand, Your Honor. I wasn't meaning to imply it that way. However, to raise a demonstration of the fact that there are ongoing different policy determinations. I want to also emphasize the risk in—well, I see I'm almost out of my time. You can go one more sentence if you like. There is another case besides the Minton case that was also ruled by this court in Gilboa v. St. Landry, which again reaffirmed the holding in Minton that a state court judgment creditors cannot seek to enforce that judgment in federal court. And I'll note, Your Honor, Judge Smith was on the panel about her current decision. And I think by referencing the Minton case, saying that the constitutional claim here was foreclosed, further emphasizes what the law is of this circuit. And so— All right. And your initial time has expired. You've saved time for rebuttal. Thank you, Mr. Trump. Thank you, Your Honor. Mr. Maska? Good morning, Your Honors. May it please the Court, Anthony Maska, Court of Appellees Lafay, McComb, and Victoria. Your Honors, I'd like to start, I think, with what Judge Elrod had hit on at the beginning, talking about this judgment that we have that says it is for the immediate return to property. We believe that sets us apart because it's the return of property. It is not a tort judgment. It is not a breach of contract judgment. My colleague just mentioned the Gilbo case, which was a tort injury received on a parish road. That was the state court judgment that was trying to be enforced in federal court. Earlier— Did you say you win because it says immediate return of property? So if they had used the term, should refund the money or pay the money judgment, you would lose? Is it just because of the wording that was made in the judgment? I think it's the basis of the judgment to give back what was never the city's. And why didn't you just do that in state court? I mean, as your friend on the other side points out in his brief, there are mandamus actions available in state court. If you think that the state judgment created a right to your clients for immediate return of the property, why wouldn't you just go and file a mandamus in state court? Well, because we were aware of the Voight decision since 2002 and since we've been handling that case in civil district court. And the plaintiffs in Voight did that, and they were turned away. They were told by the state appellate courts, hey, look, you've got a decision saying give back the minimum royalties, but there's nothing we can do to enforce that. So you think you have a federal constitutional right to come into federal court and ask for the money. When was the, as a federal Fifth Amendment takings clause matter, when was the property taken? Right after November 25th, 2019. Is that the judgment of the state court? That's when the Louisiana Supreme Court denied rents. Right after that, the city said we're not going to honor this judgment and return the property immediately. We're going to put it in a line of payment. And at that point, we're beyond the McMahon case. It's over. It's an unassailable final judgment. And it says give back the property. And the city then says no, we're not doing that. So the Supreme Court has told us very recently in the Nick decision that the Fifth Amendment right to full compensation arises at the time of the taking regardless of post-taking remedies that might be available to the plaintiff. So why is the property not taken at the time that DPW imposes the fines? That's when your clients lost their money. That's an argument that could have been asserted, I suppose, in the lower court, but that's not what the argument was. It was the invalidation of the ordinance resulting in the order to return what was taken illegally. So is the argument, it strikes me you have two different kinds of property interests, and it's not obvious from your brief what exactly you want us to say. I understand the idea that the money was taken ultra-virus under state law. We have a state court decision that so holds. I understand how an argument that you might make that the money is the property that was taken. That creates and triggers a whole line of questions under the Fifth Amendment. But that's not what you're saying to us either in the briefs or today, which is that no, Is that the property interest? The property interest is the final 2019 judgment in the state court. The moment the city then says we are not going to honor that judgment. Well, that's not really what they said. They said we'll get to it when we get to it. Well, but the judgment said it's the immediate return of property, and we believe that's distinguishable, and I believe the district court agrees with this. Under Voight, which I believe is about as four squares you can get, you don't look back into the McMahon case, which is what I believe my colleague is trying to pull us back in there, and in the brief they argue about police power versus eminent domain. But I believe the district court was correct in finding what we thought. That's not determinative. What's determinative is were they ordered to return property and then didn't do it? So how much time do they have after the court order says return the money? It's funny you ask that because I was thinking about that question sitting right back there that might come up. I don't know the exact answer other than once we come into federal court and assert a take, and if the court agrees with this, I think that there's federal rules upon the exactment of judgment when they have to then give just compensation upon a court order. Have you researched other states in the way that they pay money judgments? Have I? No. Because the rule that you're advocating, at least in the three states that are in the jurisdiction of the Fifth Circuit, each of our states have statutes, I'm most familiar with Texas's, that authorize the state legislature to appropriate money to pay judgments. But our legislature meets every two years. Is two years too long? So suppose the judgment comes down the day of sine die of legislature number one, and so it has to sit and wait until sine die of legislature number two. That means there could be two full years between the date of a judgment and the date that would be paid by the Texas legislature. Is that a taking? I suppose we'd have to develop on the facts, specific facts of the case. Why I believe this is a taking is I don't think when you talk about the FISC, let's say for easy numbers, let's say New Orleans FISC was $100 million. They've then added $25.6 million in a separate little bubble. They're trying to argue now we have to take out of the FISC $25.6 million, and our argument is no. You started with $100 million. You never should have taken the $25.6. It was never your money. It had to be returned, so pushing it back to the people who put it in leaves you with the same FISC. I totally understand all of your arguments under state law. I was a little bit confused, and I confess that it's still not totally pellucid exactly how the city of New Orleans is supposed to pay these judgments and how the whole mechanism works under state law. But you're here today to talk to us about the Fifth Amendment to the United States Constitution, which doesn't really— I mean, we look to state law for all sorts of questions, including the creation of property rights, but you're asking for a rule that would apply not to the city of New Orleans exclusively, not to every municipality in the state of New Orleans, but to every city, every political subdivision, and all three of the states in our circuit. And so that's a completely different animal. I would say we are here asking that the Voight case, which is controlling, control this case. The way I read my colleague's brief, you really can't apply Voight anywhere other than the Voight case. And I believe our circumstances arise just like in the Voight case, because in Voight, they had a judgment that said give the property back. The Olympic Board said no. They tried to go up the state route, and the state court said, look, you have a good judgment. We can't force them to do anything. So they walk across the street to the federal court, file there, and a takings claim is recognized by this court. And on remand, the lower court granted summary judgment in favor of the Voight plaintiffs on the takings claim. So you really need some, if I'm understanding your theory of the Fifth Amendment, you need some position taken by the political subdivision of the state of Louisiana that no, we will not pay. I don't think it's no, we will not pay. I think it's we will not do what the judgment said as far as returning the property immediately. But you see what you just did? You just moved out of Voight, right, or Voight, however we're going to pronounce it. In the mineral rights case, there was a contested proposition, and the political subdivision said no, we're not going to pay this. And I understand the position, but that's not what the position is taken by the city of New Orleans here. They agree they have to pay it. They're just going to get to it when they get to it. I believe in Voight. I think Voight was the way we said it. I believe in that case, the Orleans Levy Board didn't say we're not going to pay it. They said we're going to appropriate it. But we're not doing what they said is to give it back right now. We're going to appropriate it, and that's exactly what the city's done. And so being subject, as Judge Elrod said, to an appropriation process that could take who knows how long, it's more akin to the taking when they've said we're not going to do it now and we're left with no just compensation, because I would pose the question, how much just compensation is due and how long do you have to wait for just compensation if this began, the takings began in 2019 when they wouldn't give the property back? How long are they supposed to wait without just compensation? Yeah, and I suppose the flip side of the coin is how many of the people on the judgment list have valid takings claims under your theory? You're asking us to adopt a rule of constitutional law, and so my question is does it apply to literally every single person on the judgment list? Not at all, and I think we did that at the end of that section of our brief. We agree with colleagues. If it's a state court tort judgment, if it's a state court breach of contract judgment, you cannot come into federal court and say make them pay us now. But if it's an order to return property that doesn't come out of the fisk, it was never theirs. So it's the language of the judgment that makes the difference in your theory. Is that right? Yes, but I believe it's the language of the judgment because of how the property rights arise. When you get hit by the streetcar and they have to pay you $7 million, that's to make you whole. When they've taken property they have no right to take and they've been ordered to give it back, that's different. That's not a tort. That's the return of something paid that was never owed. It's the appellee's money. They never came into ownership of it because it was an illegal ordinance from the beginning. They've been ordered to simply give it back, and they're saying we're not going to give it back now, and we may not give it back for 20 years. The ordinance wasn't void ab initio, but instead had just been an act. They had the wrong car or the wrong person. They fined for the clerical error, and so they were ordered to return the money, just hypothetically. Would that be a different situation because it's not void ab initio and the statute, the state ordinance, or the city ordinance that gave the fines to begin with? It may be slightly different. The void ab initio certainly... Is that a key part? I think it is. Absolutely, I think it is. I think the void ab initio aligns us with the void determination. It seems like void, though, is really reliant on the fact that the underlying interest is a real property interest. So is our right to money. That's a real property interest. Is it? Yes, according to the Louisiana law. What case says that's a real property interest as opposed to just a property interest? Real property. Real as in... R-E-A-L, like mineral rights land. I'm sorry. Traditional taking. I got you. Traditional taking. I don't... There's a lot of regulatory taking, really, but a traditional taking seems very much tied up in the void case. I think... And void cited to Webbs, fabulous pharmacy, and Webbs was the case where the Florida court tried to take interest. That's a taking, a true per se taking, not a regulatory taking, not a Penn Central taking. An actual taking. They took interest, which is money, and said it's ours, it's not yours. And Webbs, the Supreme Court, said, no, no, no, you cannot do that. That interest follows the principle. The principle belongs to the owners of the money, and you can't, by ips and dicks it, pass a rule saying, no, no, it's ours now. We're the government. We get to say it's ours. But in your answers to Judge Elrod, you've moved away from your answers that you gave to me because, to me, you're telling me that the taking arises at the time of the state court judgment, and it's the language of the judgment, et cetera, but now you keep saying, because I realize you need void, right? You keep saying that the taking is when they appropriated the fines without, I shouldn't use the word appropriation given our confusion about the appropriation process, when they expropriated the fines without lawful authority from the DPW. So what is the taking? I'm not trying to say that the taking, the underlying, it has to be a taking in order for this to be a taking. I'm not saying that. I'm saying when the return of property is the ultimate ruling from the state court, it separates you from Minton, from Gilbo, from all those other cases that get turned away, and it gives rise to the taking's claim that can be brought in this court. Return the property now, they say no, then just compensation's required, and they're saying, we're not doing that either, so we have to come into court, and our closest, and I believe, like I said, about as four squares you can get is void because, again, when that happened in the void case, they came to federal court, and this court said, the judgment of the state court cannot turn your property rights, make them vanish behind a veil of sovereign immunity. Yeah, but void also says that the government has forcefully appropriated private property without a claim of right. Now, here, they had a claim of right. Now, as it turns out, the Louisiana state courts disagree with them, but that happens all the time. We see that in cases, governments act in ways they think are lawful at time X. At time Y, courts get to review it and say, turns out, that was ultra-virus. But Judge Oldham, I think what you're now doing is going back into McMahon. Now, I'm reading to you from the text of void. I guess what I'm trying to say is the claim of right issue has nothing to do with how it arose in McMahon. We're post-McMahon. They're under a judgment. Give it back. Not giving it back, then you have to ask, are you not giving it back because you're exercising police power? Are you not giving it back because you're exercising some eminent domain issue? Or are you just not giving it back, and yet there's no just compensation for this taking? You've got property. You're not giving it back after you've been ordered to. And it has nothing to do with how it arose in McMahon. You're now post-McMahon. You're here saying, why do we get to keep the property instead of giving it back? And I say there's no police power right to that. If there is, the district court said there's a taking, and it's clear that it must be for public use because they're spending the money. That's a taking. That's a property, and it's for public use. If anything was property, would McMahon's magic words govern... With the magic words of property in McMahon, we wouldn't look behind that. And so as long as the state court used the term property, give it back, in the judgment, it doesn't matter what the underlying interest was. And so it doesn't really matter whether it was void admonitio in a statute. None of that matters for our purposes if we're only supposed to look at the face of McMahon saying property. Is that your argument, or is it the other? Again, I think it is the way the facts result in a judgment. When the judgment then says, do this, and in McMahon, the do this was give back the property. And then the city says, we're not going to give back the property. If McMahon had said this is a damage award, if McMahon said this is a breach of contract, I don't think we're here. We're stuck under those same other cases that you can't come into federal. Imagine this case. Suppose that the Internal Revenue Service imposes a tax, ultra viris. They say, business owner, you must pay the tax. Now, if you know anything about federal tax law, you have to pay the tax and dispute it later. You're not allowed to run into court and argue about the fact that you, you know, shouldn't have to pay the tax. So you pay the million dollars. Now the Internal Revenue Service has your million dollars. And you go into tax court, and you litigate this. It goes all the way up to appeal. And at the end of the appeal, it turns out the Internal Revenue Service was acting ultra viris. And the judgment says you never had the right to take this money from the business owner in the first place, return it immediately. Taking? Yes. No. So that, you're asking us to create a federal, a square circuit split over the fact that tax, just, the law is well settled across the country that you cannot call an unlawful tax a taking. And I should have, I should have said first, I hate the tax question because under tax, there's certain specific rules of why. You have to challenge. You have to say, I'm paying this under duress. And that's why that tax, I say yes in the grand sense. In the specific sense, you're right. Because tax rules are different than this rule. But it's all money, right? It's a million dollars there. It's 20. It is, but again, I think if we look at the logic in Voight, if Voight only applies to that one single case, then that's it. Voight is foreclosed from ever being used again. We don't believe that's true. Well, to Judge Elrod's point, it could apply to cases involving real property, which makes some sense, right? Because those, that's how we see takings cases. We see takings cases with some regularity because when there's real property involved, you often don't need to get onto the list. In Texas, we call it the Miscellaneous Judgements Act. I don't, the judgment fund or whatever they use in the state of Louisiana and the city uses here. You don't need those sorts of propositions because of eminent domain is different. And so what I'm trying to understand is it sounds like you need to extend, for your clients to win, you need to extend Voight beyond real property, and here I'm using it the same way Judge Elrod did, and extend it to money. To the extent that the district court on remand said that the minimal royalties were quantified into a judgment number, and that is the number that they're now seeking to be reimbursed, I believe we're square with that because we also have a number, as we argued in our case. The only reason they're calling it a money judgment and trying to hide behind the constitutional article 12, section 10, they're saying it's money judgment, and money judgment can't be enforced here. And we say, wait a minute, that's nice, except for the fact that it's money because money is what you took. And being ordered to return the money doesn't make it a money judgment like it's a tort award or a breach of contract. So that's why, again, we think that squares with the analysis in Voight that the minimal royalties were reduced to money, which represents the minimal royalties. In our case, what they took was money, and therefore that's what they're being ordered to return. Your Honor, if you have no other questions, I would ask that the court affirm the district court ruling that the police have stated a valid takings claim and therefore deny the 12A6 measure. Thank you. All right, thank you, Mr. Moskowitz. Mr. Conk, you save some time for rebuttal. Thank you, Your Honors. I want to start off by addressing Judge Oldham's question about what is the actual taking here. Now, I've always sensed there was like a moving target with really what are we talking about here. In their briefing, what they've identified is it's the judgment, right? But for that to be the case, for there to be a taking, there can only fit that within Voight. And in the Voight case, we've distinguished it for multiple reasons that you all recognize, real or property rights called immovable here in Louisiana. It's dealing with mineral rights, again, another recognized property interest. And I think it's also important to note, as I mentioned, that this court could look at the record of the Voight litigation, look at the record and see a taking because they've identified there was already title pass, right? That can't be done here. Well, let's take a different kind of property. Let's take bank accounts. Let's say that the city is a little bit short of funds for whatever reason and they figure out a way just to levy on a certain amount of bank accounts over a million dollars. Bank account is property, obviously. It's not real property. It's not a judgment. It's just property. That could never be a taking if the city just marched in and talked some bank officer into turning over the money. I think the hypothetical is distinguishable, and here's why. You're talking about a single legal proceeding, right? And hypothetically, yes, maybe there could be a court that adjudicates those facts and finds a taking. But what complicates this scenario, which is why it's different, is we're dealing with two separate legal proceedings, right? We're having to look at the state court litigation and within vote see if there are takings there, and that's requiring another step, right? Because the state courts didn't adjudicate a constitutional claim. The state courts didn't find that the judgment isn't a result of a taking. It's not a result of any other constitutional issue. It's a result of an ordinance being found invalid under local law, entirely state and local matter. I guess the thrust of my question was to try to figure out whether there's a principled way to limit takings to real property or, in Louisiana, as you say, immovables. Takings is not principally limited just to real property. I do think that's a distinguishing factor of the vote case and a reason for why that case is specific. There's other distinguishing factors. I'm glad you all mentioned that there's different powers that come up where you discuss where takings clause comes into effect, not in tax cases. We've also recognized that police power is something different where you don't find a takings case. And so it obviously depends on the situation, and so in that hypothetical it's going to depend on the situation and why the money is coming to the hands of the government. But even recognizing that there's that type of possibility, that's not going to be the situation here because this state court didn't adjudicate a takings. They didn't adjudicate a constitutional issue. But why is it different in the bank hypothetical? Because assuming that the city says this is for public safety, we have, you know, rioting, and so we need to take this using our police power because we're going to provide for public safety. Giving that reason, does that take it out of the takings context because they're saying it's for public safety as opposed to that they've taken somebody's property? I'll say as a general rule, maybe it takes it away from the takings context, although I'm also going to recognize a court could take a different approach based on that case. But what's different here, and I want to stress that the state court didn't litigate a takings in the actual, you know, when the money was taken or was collected by the city when the fines and fees are paid. That's an issue that's already been litigated. The plaintiffs, although they said that we're trying to collaterally attack the state court litigation, really the opposite is true. They're trying to re-litigate the actual underlying act and re-characterize the fact that an act was found void of an issue, that there's a logical jump, which we think is a jump way too far, that you could then also see in that state court record that there's been a takings. You know, we're not limited to void. You know, why isn't a principled rule that where the state court has found that a property interest has been taken, that constitutes a taking for these purposes here in this court? Why isn't that a... Assuming that the language used in McMahon calls it a property interest and should return property, why isn't that a... We don't have to do... Void isn't the be-all and end-all of this if it's not applicable on the facts. I think the principle limitation should be when there is a state court judgment involving federal constitutional issues, like a just compensation award potentially, right? But here, because it only involves state and local matters, which this claim is really like a claim for a return of something not owed, right? That's very much a civil code in Louisiana obligations issue, like a contract-type claim, right? So much about this case is really a local or state and local matter that if vote is extended or this is another example, there would just be no principle way to distinguish this case from this court's precedent in Mitten v. St. Bernard Parish. And so, therefore, it would create a conflict and would be not following this court's precedent to respect the state rights to govern their own state court judgments. Thank you, Your Honors. We respectfully request you to confer. Thank you, Mr. Connelly. Your case and all of today's cases are under submission and the court is in recess until 9 o'clock tomorrow.